******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# IN RE AMANDA L.*
## (AC 44518)
## (AC 44519)

Bright, C. J., and Alvord and Sullivan, Js.

*Syllabus*

The respondent parents filed separate appeals to this court from the judgment of the trial court terminating their parental rights with respect to their minor child, A, who had previously been adjudicated neglected. The respondents claimed that the termination of their parental rights was unconstitutional, unlawful, and fraudulent. *Held* that the trial court's decision was legally sound: the court found, by clear and convincing evidence, that the respondents never complied with the specific steps issued for their rehabilitation so that they could care for A as required under the applicable statute (§ 17a-112 (j) (3) (B)), and that termination of the respondents' parental rights was in the best interest of A, and the respondents did not challenge those findings; moreover, the respondents' claims were unsupported by reference to the record, citations to applicable law, or any analysis.

Argued November 10—officially released November 30, 2021**

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of Middlesex, Juvenile Matters at Middletown, where the matter was tried to the court, *Hon. Barbara M. Quinn*, judge trial referee; judgment terminating the respondents' parental rights, from which the respondents filed separate appeals to this court. *Affirmed.*

*Anthony L.*, self-represented, the appellant in Docket No. AC 44518 (respondent father).

*Kimberly A.*, self-represented, the appellant in Docket No. AC 44519 (respondent mother).

*John E. Tucker*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, and *Evan O'Roark*, assistant attorney general, for the appellee in Docket Nos. AC 44518 and AC 44519 (petitioner).

*Melissa J. Veale*, for the minor child.

*Opinion*

PER CURIAM. In these consolidated appeals,[1] the respondent parents, Kimberly A. and Anthony L., appeal from the judgment of the trial court terminating their parental rights with respect to their minor child, Amanda L. (Amanda). Specifically, the respondents claim that the termination of their parental rights was unconstitutional, unlawful, and fraudulent.[2] We affirm the judgment of the trial court.

The following facts, which the court found by clear and convincing evidence, and procedural history inform our review of this appeal. In 2016, the Department of Children and Families (department) received an anonymous note raising concerns about whether Amanda was being neglected by the respondents. Thereafter, the department launched an investigation and, in October, 2016, the petitioner, the Commissioner of Children and Families, filed a neglect petition on behalf of Amanda. In that petition, the petitioner alleged that Amanda was being denied proper care and attention as she had not been enrolled in school. Immediately after that petition was filed, the respondents began resisting all requests and court orders concerning Amanda and denied the department any access to her.

"Ultimately, after additional motions and orders, on March, 9, 2017, [the petitioner] filed a motion for order of temporary custody, which was granted." Amanda then was removed from the respondents' care and immediately was taken to Connecticut Children's Medical Center, where it became apparent that she "exhibited concerning behaviors and a lack of speech, although she was then already going on ten years old." Amanda was later diagnosed with level three autism, as well as other speech and intellectual disabilities. After the respondents refused to consent to either medical treatment or educational services for Amanda, the court entered orders authorizing the petitioner to make both medical and educational decisions for her.

The neglect trial occurred during the spring of 2018. On April 17, 2018, the court, *Abery-Wetstone, J.*, ruled from the bench and found that Amanda "has been denied proper care and attention physically, educationally, and emotionally" and adjudicated her neglected.[3] The court then committed Amanda to the petitioner's care and sustained the order of temporary custody. The court also set forth the specific steps required for the respondents' reunification with Amanda. "The central goals within the specific steps for the [respondents] were to take part in parenting programs and make progress [toward] any goals that these treatment programs would have established for them." The respondents, however, generally refused to take part in any of the steps ordered. In fact, the only step that the respondents took was to visit Amanda on a regular basis.

On December 11, 2018, the petitioner filed a petition for the termination of the respondents' parental rights. The petition alleged two grounds for termination: "(1) parental failure to rehabilitate so that they could assume a responsible position in their child's life within a reasonably foreseeable period of time, [pursuant to] . . . General Statutes § 17a-112 (j) (3) (B) (i); and (2) parental failure to rehabilitate where their child has been in the custody of [the petitioner] for more than fifteen months, pursuant to . . . § 17a-112 (j) (3) (B) (ii)." Trial on the termination petition took place on various dates between July, 2019, and October, 2020. On January 11, 2021, the court, *Hon. Barbara M. Quinn*, judge trial referee, issued its memorandum of decision, wherein it terminated the parental rights of the respondents and appointed the petitioner as the statutory parent for Amanda. The respondents then filed an emergency motion for reconsideration and reversal, and motions for a new, fair and impartial trial, for an order, visitation and increased family contact, for a stay, and a supplemental motion in support of pleadings and response. The court, *Olear, J.*, denied all five postjudgment motions. These appeals followed.

We begin with the applicable standard of review and general governing principles. "Although the trial court's subordinate factual findings are reviewable only for clear error, the court's ultimate conclusion that a ground for termination of parental rights has been proven presents a question of evidentiary sufficiency. . . . That conclusion is drawn from both the court's factual findings and its weighing of the facts in considering whether the statutory ground has been satisfied. . . . On review, we must determine whether the trial court could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify its [ultimate conclusion]. . . . When applying this standard, we construe the evidence in a manner most favorable to sustaining the judgment of the trial court. . . .

"Proceedings to terminate parental rights are governed by § 17a-112. . . . Under [that provision], a hearing on a petition to terminate parental rights consists of two phases: the adjudicatory phase and the dispositional phase. During the adjudicatory phase, the trial court must determine whether one or more of the . . . grounds for termination of parental rights set forth in § 17a-112 [(j) (3)] exists by clear and convincing evidence. The [petitioner] . . . in petitioning to terminate those rights, must allege and prove one or more of the statutory grounds. . . .

"[I]n order to prevail on a petition for the termination of parental rights pursuant to § 17a-112 (j) (3) (B) (i), the petitioner must prove by clear and convincing evidence the department's reasonable efforts or the par-

ent's inability or unwillingness to benefit therefrom, and that termination is in the best interest of the child. In addition, under . . . § 17a-112 (j) (3) (B) (i), the petitioner must prove by clear and convincing evidence that the child . . . has been found by the Superior Court or the Probate Court to have been neglected, abused or uncared for in a prior proceeding . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent . . . and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ." (Citations omitted; internal quotation marks omitted.) *In re Xavier H.*, 201 Conn. App. 81, 87–88, 240 A.3d 1087, cert. denied, 335 Conn. 981, 241 A.3d 705 (2020), and cert. denied, 335 Conn. 982, 241 A.3d 705 (2020).

"If the trial court determines that a statutory ground for termination exists, then it proceeds to the dispositional phase. During the dispositional phase, the trial court must determine whether termination is in the best interests of the child. . . . The best interest determination also must be supported by clear and convincing evidence." (Internal quotation marks omitted.) *In re Ja'La L.*, 201 Conn. App. 586, 595, 243 A.3d 358 (2020), cert. denied, 336 Conn. 909, 244 A.3d 148 (2021).

In the present case, the court was required to make two findings. First, the court was required to find, by clear and convincing evidence, that the petitioner proved that the respondents had failed to achieve sufficient personal rehabilitation. See *In re Xavier H.*, supra, 201 Conn. App. 88. Second, the court had to find that the termination of parental rights was in the best interests of Amanda. See *In re Ja'La L.*, supra, 201 Conn. App. 595.

Turning to the first requirement, the court made the following findings: "The court concludes, from all of the credible and reliable testimony . . . that [the respondents] never participated in learning about the services Amanda needed to thrive. In addition, as those services began to improve her condition and her ability to function in the world around her, their refusal and failure as parents was demonstrated to be profound and hostile to their child's well-being. It is evident that both of [the respondents] do not possess the ability to regulate their own emotions to collaborate with the professionals so that they could become the above average and engaged caretakers this autistic child needs.

"The court concludes from the unopposed evidence in this trial that, as observed and found in the earlier trial, 'the respondents have prioritized their apparent psychological need to defy authority over Amanda's welfare.' The court finds, from the clear and convincing evidence, that the [respondents] failed to follow any

specific steps for their rehabilitation other than visitation and persisted in their behavior which only serves to injure their child's potential to grow and become a more independently functioning adult. Their inability to adjust their own behavior to be able to rehabilitate so that they could parent this child in the reasonably foreseeable future has been without question and demonstrated by clear and convincing evidence.

\* \* \*

"As the court has found from the clear and convincing evidence in this case, neither [respondent] ever complied with the specific steps issued for their rehabilitation so that they could care for their child. The only step either undertook was to visit with Amanda. The clear and convincing evidence demonstrates that both [the respondents] made no progress toward understanding Amanda's specialized needs or how to properly care for her so that she may become as independently functioning as possible, given her limitations. There is no evidence of any changes in their behavior and outlook to support the claim that they could reasonably be safely able to care for Amanda, now or in the near future. The court finds from the clear and convincing evidence that the first grounds alleged for termination of [the respondents'] rights have been proven by [the petitioner]."[4] (Footnote omitted.)

As to the dispositional phase, the court stated: "The court must now address the issue of whether termination of parental rights is in the best interests of Amanda. Amanda does not have a biological parent available to care for her . . . . She needs stability as well as an emotionally stable caretaker who can collaborate and cooperate with the professionals needed to provide Amanda's ongoing supportive care. As Amanda's clinician and other caretakers and staff testified, her care needs remain significant. She is a special needs child with significant disabilities who cannot be cared for without specialized support to keep her safe and functioning. Amanda, like all children, needs permanency. . . . After carefully considering Amanda's age and the totality of her circumstances, the court concludes, from the clear and convincing evidence, that termination of [the respondents' parental] rights is in her best interests."

Accordingly, the court in the present case made the factual findings that it was required to make before terminating the respondents' parental rights.[5] On appeal, the respondents do not challenge those findings. Instead, they claim, without reference to the record, citations to applicable law, or any analysis, that the termination of their parental rights was unconstitutional, unlawful, and fraudulent. Because such claims are not supported by the facts or the law and do not challenge the factual findings that support the court's decision to terminate the respondents' parental rights,

they do not provide us with a valid basis to reverse the judgment of the court. See *In re Sequoia G.*, 205 Conn. App. 222, 226–27, 256 A.3d 195, cert. denied, 338 Conn. 904, 258 A.3d 675 (2021) (appellate courts will reverse trial court's determination that termination of parental rights is in best interests of child only if factual findings underlying court's decision are clearly erroneous).

The judgment is affirmed.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** November 30, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The respondents filed two separate appeals from the trial court's judgment. Specifically, Anthony L. filed the appeal in Docket No. AC 44518, while Kimberly A. filed the appeal in Docket No. AC 44519. Both appeals raise identical issues. Accordingly, pursuant to Practice Book § 61-7 (b) (3) and (c), this court sua sponte ordered that the appeals be consolidated and that the respondents file a single, consolidated brief and appendix.

[2] On appeal, the respondents also challenge the neglect proceedings that occurred prior to the termination of their parental rights. The respondents, however, failed to pursue their separate appeals to this court from the judgment rendered in those proceedings and, therefore, those appeals were dismissed. Their petition for certification to appeal was also denied. *In re Amanda L.*, 330 Conn. 966, 200 A.3d 188 (2019). Accordingly, the respondents' claims concerning the neglect proceedings are not properly before us, and we, thus, decline to review them. See *In re Brooklyn O.*, 196 Conn. App. 543, 548, 230 A.3d 895 (2020) (respondent parent barred from challenging judgment from which he did not properly appeal); see also *In re Shamika F.*, 256 Conn. 383, 406–407, 773 A.2d 347 (2001) (refusing to countenance collateral attack on neglect proceedings in light of failure to appeal temporary custody orders).

[3] On September 7, 2018, the court issued a written articulation of its ruling, wherein it adopted the findings of fact and conclusions of law that the petitioner had set forth in her motion for articulation.

[4] Additionally, the court found that Amanda previously had been adjudicated neglected and that she had been in the custody of the petitioner for at least fifteen months, as required by § 17a-112 (j) (3) (B).

The court also considered and made written findings regarding each of the seven factors set forth in § 17a-112 (k).

[5] Because the court had previously approved a permanency plan other than reunification, the court was not required to find that the department had made reasonable efforts to support the respondents' progress toward reunification. Nonetheless, the court found that the department had made such reasonable efforts but that "both [respondents] failed to participate in any effort [toward] reunification with Amanda and were therefore unwilling and unable to benefit from [the department's efforts] . . . ."